The STATE of Iowa, Appellee,

v.

Lester J. BEDEL, Appellant.

No. 54745.

Supreme Court of Iowa.

Dec. 15, 1971.

Orville A. Hames, Remsen, for appellant.

Richard C. Turner, Atty. Gen., James W. Hughes, Asst. Atty. Gen., and James L. McDonald, County Atty., Cherokee, for appellee.

REES, Justice.

Defendant was charged by county attorney's information with the crime of operating a motor vehicle while under the influence of intoxicants in violation of section 321.281, The Code, 1966. He was tried to a jury, found guilty and sentenced, and now appeals. We affirm.

During the late hours of September 16, 1970, defendant was driving and operating a motor vehicle, the property of his son on highway 3. At a point about 2½ miles west of Cherokee, he lost control of his automobile, left the highway and came to rest against a tree, as a consequence of which he sustained injuries and was removed to the hospital at Cherokee. A call was made to a Dr. Fishman of Cherokee, by the admitting nurse, and at that time Dr. Fishman directed the nurse to administer to defendant 75 milligrams of demerol, a sedative, and further to administer to him a shot of tetanus toxoid. Dr. Fishman was not present at the hospital when the drugs were administered, nor did he see defendant until the following morning, September 17. Apparently no doctor-patient relationship existed between Dr. Fishman and the defendant prior to defendant's admittance to the hospital.

Following the call to Dr. Fishman by the nurse, defendant executed a written consent to the withdrawal of a specimen of his blood. A written request for a chemical test of defendant's blood had been

made by the arresting officer, defendant at that time being under arrest for having operated a motor vehicle while under the influence of intoxicants. Subsequent to defendant's execution of the written consent to the withdrawal of the specimen, a second call was made to Dr. Fishman who authorized the laboratory technician at the hospital to actually withdraw the blood specimen. The blood was withdrawn and later submitted to chemical analysis by a laboratory regularly performing such services. The microbiologist who performed the test on the specimen testified it contained 150 milligrams of alcohol per 100 cubic centimeters of blood. The defendant asserts two propositions upon which he relies for reversal:

(1) The trial court erred in allowing State's exhibit B, the blood sample of the defendant, into evidence. That the court erred in overruling defendant's motion to suppress concerning exhibit B as to arguing the same and admitting the same into evidence, and allowing the same to be shown in the presence of the jury. That the court erred in not finding a doctor-patient relationship existed at the time Dr. Fishman directed the drawing of the blood sample from the defendant by the Sioux Valley Hospital technician; and

(2) The court erred in submitting instruction 10 to the jury on the grounds that the same is unconstitutional, and places the burden of proof upon the defendant.

We shall deal with the two assignments so urged in inverse order.

I. Instruction 10 reads as follows:

"You are instructed that under the laws of the State of Iowa a person is presumed to be under the influence of an alcoholic beverage if there was at the time more than 100 milligrams of alcohol per 100 cubic centimeters blood in the person's blood."

The above instruction is nothing more nor less than a recitation of the provisions of the statute, which creates a presumption of intoxication as the quoted instruction clearly advised the jury. Section 321.281, The Code 1966, as amended by Chapter 205, Acts of the 63rd General Assembly. We are not disposed to the view that the giving of the instruction, as above set out, in any manner placed the burden of proof upon the defendant.

In any event, the record fails to disclose that the defendant made any objections to the instruction prior to the giving of the instructions to the jury, nor was any request made to the court to elaborate upon the instructions so given or to expand or extend them as is required by rule 196, Rules of Civil Procedure, and the cases interpreting the rule. Because of the failure to preserve the alleged error at trial level, we are unable to reach the substance of the challenge to instruction 10 at this time. State v. Carstens (Iowa 1970), 182 N.W.2d 119, 120–121, and cases there cited.

We note, however, that other jurisdictions in passing upon the constitutionality of similar presumptions have upheld those presumptions. See Anno., 46 A.L.R.2d 1176.

II. Neither are we able to agree with defendant that the trial court erred in allowing State's exhibit B, the blood sample, into evidence. The withdrawing of the sample of defendant's blood and the procedures followed in securing it were insofar as the record discloses in all respects regular. A request in writing had been made of the defendant to furnish a sample of blood, and a consent to the withdrawal of the same was executed by the defendant, likewise in writing. The authorization of a physician to a laboratory technician is contemplated by chapter 205, § 14, of the Acts of the 63rd G.A., now § 321B.4, The Code, 1971.

As no testimonial privilege existed at common law concerning confidences entrusted by a patient to his physician, the physician-patient privilege arises solely by

virtue of section 622.10, The Code, 1966. Said section provides:

"No * * * physician * * * who obtains such information by reason of his employment, * * * shall be allowed, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity, *and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline.* * * *" (emphasis supplied)

In State v. Tornquist, 254 Iowa 1135, 1154, 120 N.W.2d 483, 494 (1963), and cases cited therein, we said:

"The essential elements of communication privileged under the doctor-patient relationship are these: 1, the relation of doctor-patient; 2, information acquired during this relation; and 3, the necessity and propriety of the information to enable the doctor to treat the patient skillfully in his professional capacity. * *"

Our duty, then, is to ascertain whether the necessary elements to create a physician-patient privilege existed in the case before us.

Dr. Fishman testified it was his conclusion that a physician-patient relationship was created when the defendant was admitted to the hospital and the doctor prescribed the administration of the sedative and the tetanus injection.

It is obvious from the record, and defendant's counsel concedes, that Dr. Fishman did not see or examine the defendant until the morning of September 17, 1970. While we do not require that the physician actually see and examine the patient for the privilege to exist, it is absolutely essential that the communication, alleged to be privileged, was related to the medical diagnosis or treatment of the patient. In the instant case the certification to withdraw the blood, or the test itself were not related to either medical diagnosis or treatment of the patient and are not privileged.

The physician-patient privilege is intended to foster free and full communication between the physician and the patient in diagnosis or treatment of the patient's ills. This privilege is not designed, nor will it be so extended, to act as a shield behind which a patient may conceal information, though made to his physician, which is not necessary and proper to enable the physician to perform his profession skillfully. See Gibson and Ladd, Blood Test to Determine Intoxication, Physician-Patient Privilege, 24 Iowa L. Rev. 191, 255–256 (1939); Wigmore, Evidence, § 2380a, pp. 828–832.

Being unable to conclude that the blood test, or the certification therefor, was within a *physician-patient privilege,* it was not error for the court to allow the results of the blood test to be admitted into evidence.

We appreciate and understand that the statute creating the privilege, § 622.10, The Code, 1966, is to be liberally construed to carry out its purpose. However, we cannot, under the guise of liberal construction, extend the statute to cover cases in which any of the three essential elements necessary to create a physician-patient privilege is lacking. State v. Tornquist, *supra,* 254 Iowa at 1154, 120 N.W.2d at 494; Newman v. Blom, 249 Iowa 836, 844, 89 N.W.2d 349, 355 (1958).

There was no showing that any communication concerning the blood test was necessary and proper to enable Dr. Fishman to treat the defendant. The doctor did not see the defendant personally until the next morning, nor was it shown that the nurse who contacted Dr. Fishman had done so at the request of the defendant.

For the foregoing reasons, we conclude no physician-patient privilege existed between Dr. Fishman and the defendant at the time the doctor authorized the with-

drawal of the blood specimen from defendant.

We find no error in the record and affirm the trial court.

Affirmed.

All Justices concur.