STATE of Iowa, Petitioner,

v.

The DISTRICT COURT OF IOWA, IN AND FOR LINN COUNTY, and William R. Eads, Judge, Respondents.

No. 56223.

Supreme Court of Iowa.

May 22, 1974.

William G. Faches, County Atty., and Eugene J. Kopecky, Cedar Rapids, for petitioner.

Robert C. Nelson and Robert M. Fassler, Cedar Rapids, for respondents.

Heard before MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

We granted certiorari in this case to test the legality of respondent's order suppressing an implied consent blood test on the ground it violated the doctor-patient privilege. We sustain the writ and remand with directions.

At approximately 6:00 P.M. June 17, 1972, Francis Russell Lyman was driving a vehicle which came into collision with another car in Linn County, Iowa. A passenger in the other auto died as a result of his injuries.

Lyman was taken to Mercy Hospital in Cedar Rapids, Iowa, for treatment. At about 10:00 P.M. an investigating patrolman, Gabrielson, in a telephone conversation with Dr. Meffert, Lyman's treating doctor, ascertained the patient could understand questions relating to the blood test procedure. The doctor authorized Mrs. Hatfield, a medical technologist who was listening to the conversation on another telephone, to draw the blood. Gabrielson then went to Lyman's room, placed him under arrest, and invoked the implied consent procedure pursuant to chapter 321B, The Code. Lyman signed the necessary consent form and the blood specimen was withdrawn.

Lyman was indicted for operating a motor vehicle while under the influence of an alcoholic beverage, and for manslaughter. His counsel moved to suppress any evidence relating to his blood specimen because of the claimed violation of the doctor-patient privilege. At hearing on the suppression motion, in addition to the above facts, there was presented the testimony of Dr. Meffert who said at the time he authorized the blood test he felt it would have diagnostic value in treating his patient.

Respondent found Dr. Meffert to be Lyman's attending doctor who also authorized the blood to be taken from Lyman by medical technologist Hatfield. The court's

factual findings included Dr. Meffert's testimony concerning the value of a blood test for diagnostic purposes, and that Lyman at no time waived the doctor-patient privilege.

Respondent suppressed all evidence of the blood test and impliedly held testimony of Dr. Meffert or Mrs. Hatfield would fall within the prohibition of § 622.10, The Code.

I. A trial court's ruling on a motion to suppress can be reviewed by certiorari. State v. Holliday, 169 N.W.2d 768, 770–771 (Iowa 1969); State v. Rees, 258 Iowa 813, 816, 139 N.W.2d 406, 408 (1966). The hearing here is not de novo and we do not review fact findings of the lower tribunal further than to ascertain they are sustained by competent and substantial evidence. Only questions of law are presented. Rule 306, Rules of Civil Procedure; Harnack v. District Court of Woodbury County, 179 N.W.2d 356, 359–360 (Iowa 1970).

II. Insofar as relevant here, § 622.10, The Code provides:

"No practicing * * * physician * * * or confidential clerk of any such person, who obtains such information by reason of his employment, * * * shall be allowed, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline. Such prohibition shall not apply to cases where the person in whose favor the same is made waives the rights conferred * * *."

The word "communication" as it appears in § 622.10 has been interpreted to mean all knowledge and information gained by the physician in the observation and personal examination of the patient in the discharge of his duties. Newman v. Blom, 249 Iowa 836, 844, 89 N.W.2d 349, 354–355 (1958); Howard v. Porter, 240 Iowa 153, 154–155, 35 N.W.2d 837, 838 (1949).

Thus the essential elements of communication privileged under the doctor-patient relationship are, 1) the relation of doctor-patient; 2) information acquired during this relation; and 3) the necessity and propriety of the information to enable the doctor to treat the patient skillfully in his professional capacity. State v. Bedel, 193 N.W.2d 121, 124 (Iowa 1971); State v. Tornquist, 254 Iowa 1135, 1154, 120 N.W.2d 483, 494 (1963).

In Bedel, supra, the third essential element required to trigger the § 622.10 privilege was lacking. Consequently we were not there required to confront the basic tension between that privilege and the necessity to lay a proper foundation for admission of the result of a chapter 321B blood test. In the case sub judice, the doctor's conclusion an alcohol blood test would be helpful to his diagnosis, arrived at several hours after his patient's hospital admission and after the patient had been removed from the trauma center to his room, supplies the factor missing in Bedel.

Insofar as pertinent to this appeal, the proper foundation for admission of the test would merely necessitate Dr. Meffert's testimony that upon request he authorized withdrawal of the blood specimen, and Mrs. Hatfield's testimony concerning the withdrawal of blood and disposition of the vials.

The protective standards of § 321B.4 were obviously adopted both to protect the health of the person submitting to the test and to guarantee its accuracy for later proceedings. State v. Binkley, 201 N.W.2d 917, 920 (Iowa 1972); State v. Wallin, 195 N.W.2d 95, 97 (Iowa 1972). Clearly, no physician should know better than the personal doctor of the person submitting to the test whether that person should be subjected to blood withdrawal. In this case the investigating officer took

an entirely rational step: he called Dr. Meffert, the treating physician, to authorize withdrawal of Lyman's blood. In this sense, use of a treating doctor furthers the purposes of the statutory standards.

Moreover, a pragmatic review of this and similar situations leads us to conclude a non-treating physician would be reluctant to withdraw or authorize withdrawal of blood from the injured patient of another physician. As a consequence, where the arrested person is injured, vital evidence will be suppressed by a rigidly broad application of the § 622.10 privilege.

Neither should we arrive at a conclusion which would mean a physician called to take the blood specimen in order to assist the State in prosecuting a person accused of a dangerous crime could not perform his other societal function of attending an injured person, on penalty of destroying the benefit of the test if he performed the treating function. "The law should not be construed to prevent the doctor from performing this duo-function and requiring one to be performed at the sacrifice of the other." Ladd and Gibson, Blood Test to Determine Intoxication, 24 Iowa L.Rev. 191, 261 (1939).

■■ Lyman was advised of the chapter 321B procedure and consented to a test of his blood to determine its alcoholic content. In doing so he necessarily consented (so long as the test was taken pursuant to the provisions of chapter 321B) to admission of the test results into evidence in any subsequent trial, and waived the privilege to the extent necessary to accomplish that limited purpose. The physician-patient privilege was not designed, nor will it be extended, to act as a shield behind which the patient may take refuge after flunking a chapter 321B blood alcohol test to which he voluntarily assented. See Bedel, supra, 193 N.W.2d at 124.

■ We hold the public policy to limit death and injury on our highways is best served by permitting the State to interrogate this physician, and Mrs. Hatfield, to the minimal extent necessary to lay the above-described foundation for admission of the test result.

Dr. Meffert's testimony, in view of the motion, should be suppressed as it relates to Lyman's physicial condition, mental state, responses, or any other observations or information gained in the course of his treatment and diagnosis of this patient. Of course, he shall not be interrogated by the State as to any opinion he might hold relating to Lyman's alleged intoxication. See People v. Singer, 236 N.Y.S.2d 1012, 1013 (Suffolk Co.Ct.1962).

III. Lyman's motion to suppress was also based on several other grounds, none of which was treated in the trial court's ruling. See rule 118, R.C.P.; Ruby v. Easton, 207 N.W.2d 10, 13–15 (Iowa 1973). The record before us is inadequate to weigh the validity of the other grounds if we were inclined to do so. See Newmire v. Maxwell, 161 N.W.2d 74, 80 (Iowa 1968); cf. State v. Denato, 173 N.W.2d 576, 579 (Iowa 1970).

This case is remanded to trial court with directions to modify its order of suppression in conformance with this opinion, without prejudice to Lyman's right during trial to again raise those other grounds of his motion not treated below or here.

Writ sustained and remanded with directions.