THE STATE OF OHIO, APPELLEE, *v.*
DRESS, APPELLANT.

(No. L-82-214—Decided
December 17, 1982.)

*Ms. Sheilah H. McAdams,* city prosecutor, for appellee.

*Mr. Gary F. Kuns,* for appellant.

WILEY, J. This case comes before the court on appeal from a judgment of the Maumee Municipal Court, wherein defendant-appellant, Emery A. Dress, was convicted and sentenced for violating R.C. 4511.19 (driving while intoxicated).

The undisputed facts precipitating this appeal are as follows. On December 26, 1981, appellant was driving his pickup truck eastbound on U.S. Route 24,

near Bailey Road, when he lost control of the vehicle. Appellant's truck left the road, crashed and turned over. The accident occurred at approximately 6:30 p.m. State Highway Patrol officers arrived on the accident scene shortly thereafter and began their investigation. The record indicates that some of these officers noticed an odor of alcohol on appellant's person. Appellant sustained injuries from the accident and was taken by ambulance to St. Luke's Hospital. He was admitted to the emergency receiving room where the attending physician conducted a physical examination. Appellant's injuries consisted of several minor cuts, bruises and abrasions. Trooper Walker, who had come from the accident scene, was present in the emergency room during appellant's examination. The examining physician, on his own initiative, ordered and administered a blood-alcohol test to determine the alcohol concentration in appellant's bloodstream. At no time did Trooper Walker order a blood-alcohol test or suggest that one be given; however, he was present in the room when the blood sample was extracted. A hospital lab technician analyzed the blood sample, and it is undisputed that he did not possess the standard testing permit issued by the Director of the Ohio Department of Health under R.C. 3701.143. Appellant's blood sample revealed a blood-alcohol concentration of 0.25 percent. Trooper Walker did not take appellant into custody, but he did issue a citation for the offense of operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19.

On December 31, 1981, appellant filed a motion in limine seeking to prohibit the prosecution from using at trial the hospital records containing the results of his blood-alcohol test. The court held a hearing on said motion on February 10, 1982, at which time it directed both the prosecution and the defense to submit memoranda addressing the legal issues raised in appellant's motion. Both parties filed such memoranda. On March 31, 1982, the trial court rendered its judgment and written decision denying appellant's motion in limine. Appellant filed a motion for reconsideration which was considered and denied by the trial court. A jury trial commenced on June 29, 1982. On June 30, 1982, the jury returned a verdict finding appellant guilty of the offense charged, and the court imposed sentence thereon. Appellant has timely prosecuted this appeal in which he presents two assignments of error, the first of which is as follows:

"The Trial Court erred when it interpreted Section 4511.191 Revised Code (Ohio's implied consent statute) as constituting an implied waiver of the physician-patient privilege, § 2317.02, and on that basis admitting into evidence the results of a blood-alcohol test which was obtained by Defendant's physician during the course of a medical examination."

The physician-patient privilege expressed in R.C. 2317.02(B) does not preclude the admission in evidence of the results of the blood-alcohol test herein, even though R.C. 4511.191 does not constitute an implied waiver of the privilege. The trial court did not err in admitting the test, even though, arguably, for the wrong reason.

R.C. 2317.02 establishes several testimonial privileges which operate to exclude communications made or acts done in the course of certain relationships specified therein. The statute extends a privilege to the physician-patient relationship, providing in pertinent part:

"The following persons shall not testify in certain respects:

"* * *

"(B) A physician concerning a communication made to him by his patient in that relation or his advice to his patient but the physician may testify by express consent of the patient * * *."

In Ohio, the general evidentiary rule favors the competency of witnesses, and

no witness may claim a privilege to obstruct the receipt of relevant evidence unless a statute or case law otherwise provides. *In re Frye* (1951), 155 Ohio St. 345 [44 O.O. 320]. Moreover, the common law traditionally extended no testimonial privilege to the physician-patient relationship. *In re Loewenthal* (1956), 101 Ohio App. 355, 357 [1 O.O.2d 302]. Consequently, the privilege set forth in R.C. 2317.02(B) is in derogation of the common law and must, therefore, be *strictly* construed against the person asserting it. *Weis* v. *Weis* (1947), 147 Ohio St. 416 [34 O.O. 350]; *In re Roberto* (1958), 106 Ohio App. 303, 307 [7 O.O.2d 63]. Cf. *State* v. *Halleck* (1970), 24 Ohio App. 2d 74, 81 [53 O.O.2d 195].

At the outset, we note that appellant's first assignment of error appears to present this court with a heretofore unresolved legal question in this state. Neither party to this appeal has cited an Ohio case which squarely addresses the precise issue raised herein, and our independent research has disclosed none. In support of his first assignment, appellant vigorously argues that the physician-patient privilege rendered inadmissible in evidence the hospital records containing his blood-alcohol test results. He maintains that since the blood-alcohol test was administered by the physician as part of the treatment of appellant's injuries, the privilege precludes its admission at trial. He supplements his argument by reference to several Ohio cases which address the nature and extent of a privileged communication between a physician and his patient. Among these are *Baker* v. *Indus. Comm.* (1939), 135 Ohio St. 491 [14 O.O. 392], and *Weis* v. *Weis, supra.* In response, appellee contends that appellant's blood-alcohol test did not rise to the status of a privileged communication. Appellee additionally contends that even if the "communication" of the blood-alcohol test result is determined to be a privileged one, appellant should be found to have implicitly

waived his privilege by operation of law under the implied consent provisions of R.C. 4511.191(A).

R.C. 4511.191(A) states, in part, as follows:

"(A) Any person who operates a motor vehicle upon the public highways in this state shall be deemed to have given consent to a chemical test or tests of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood if arrested for the offense of driving while under the influence of alcohol. * * *"

Appellee's contention that this section constitutes an implied waiver of appellant's right to assert his privilege is not without merit. However, the Ohio Supreme Court has clearly indicated that the privilege set forth in R.C. 2317.02(B) can be waived *only* by the methods provided for in that statute in personal injury actions. *State, ex rel. Lambdin,* v. *Brenton* (1970), 21 Ohio St. 2d 21, 24 [50 O.O.2d 44]; see, also, *Ausdenmoore* v. *Holzback* (1914), 89 Ohio St. 381, 383. Cf. *State, ex rel. Floyd,* v. *Court of Common Pleas* (1978), 55 Ohio St. 2d 27, 28 [9 O.O.3d 16]. R.C. 2317.02(B) does not make reference to the implied consent statute, R.C. 4511.191(A), and, in strictly construing R.C. 2317.02(B), we decline to adopt appelle's waiver theory. We cannot conclude that the legislature intended R.C. 4511.191(A) to be an implicit exception to R.C. 2317.02(B). Yet, for reasons more fully developed below, the policy underlying the implied consent statute is a factor to be considered in determining whether the nature and extent of the public interest outweigh the interest of the patient in the context of a criminal prosecution.

The blood-alcohol test administered in connection with appellant's physical examination constitutes a "communication" as the word is used in R.C. 2317.02(B). That term has been interpreted to include not only verbal exchanges of information, but also physical observations and physi-

cal examinations. See *Baker* v. *Indus. Comm., supra,* at 496; *In re Roberto, supra,* at 308; *McKee* v. *New Idea, Inc.* (App. 1942), 36 Ohio Law Abs. 563, 578. More to the point, R.C. 2317.02(B) prohibits a physician from testifying concerning "* * * a communication made to him by his patient *in that relation* or his advice to his patient * * *" (emphasis added). The party seeking to invoke the privilege must establish that the communication was extended to the physician as a private confidence, or intended to be received in that manner. To be privileged, the communication must also facilitate, or be intended to facilitate, medical treatment, diagnosis or advice. *Meier* v. *Peirano* (1945), 76 Ohio App. 9, 11-12 [31 O.O. 342]. Cf. *State* v. *Treadway* (App. 1974), 69 O.O.2d 507, 328 N.E. 2d 825.

The parties have advanced interesting arguments as to why the communication of appellant's blood-alcohol concentration is or is not privileged. In weighing these conflicting arguments, we conclude that the public interest in the sensible and efficient administration of criminal justice outweighs the policy considerations which support the physician-patient privilege. In *State* v. *Antill* (1964), 176 Ohio St. 61 [26 O.O.2d 366], the Ohio Supreme Court articulated the basic policy supporting the physician-patient privilege, stating in part:

"* * * The purpose of this privilege is to encourage patients to make a full disclosure of their symptoms and condition to their physicians without fear that such matters will later become public. *Against the interest of the patient in having his condition remain confidential, must be balanced the interest to the public in detecting crimes in order to protect society."* (Emphasis added). *Id.* at 64-65.

The *Antill* opinion implicitly recognized that the privilege is premised on an underlying calculation that the benefits to the relationship ostensibly gained by excluding the information generated during its existence outweigh the burdens thereby imposed on the truth-seeking process and the administration of justice. Assertion of the privilege serves to remove from the trier of fact otherwise relevant, reliable and competent evidence. Because the privilege operates to the detriment of the truth-seeking process, it has been viewed as a pernicious anomaly in our system of evidence. See 8 Wigmore, Evidence (McNaughton Rev. 1961 Ed.), Sections 2380-2381. ("* * * [T]he privilege has come to mean little but the suppression of useful truth * * *." *Id.* at 831.)

Through statute or case law, an increasing number of jurisdictions are disallowing application of the physician-patient privilege in the context of criminal prosecutions, and, in particular, prosecutions for the offense of driving while intoxicated and related crimes. See *State, In the Interest of M.P.C.* (1979), 165 N.J. Super. 131, 397 A. 2d 1092; *State* v. *Erickson* (N.D. 1976), 241 N.W. 2d 854; *State* v. *District Court of Iowa* (Iowa 1974), 218 N.W. 2d 641; *State* v. *Bedel* (Iowa 1971), 193 N.W. 2d 121; *State* v. *Betts* (1963), 235 Ore. 127, 384 P. 2d 198; *State* v. *Bounds* (1953), 74 Idaho 136, 258 P. 2d 751. Cf. *State* v. *Kuljis* (1967), 70 Wash. 2d 168, 171-172, 422 P. 2d 480.

We concede that the law, to a *reasonable* degree, should encourage a frank and uninhibited flow of information between doctor and patient by protecting their private, confidential communications. However, the privilege is not absolute and must yield when the public interest outweighs the policy considerations supporting the privilege. This is especially so in the context of a prosecution for the offense of driving while intoxicated. To allow the privilege to be invoked so as to exclude evidence tending to prove that appellant was driving while intoxicated would be against the public interest and would not serve the purpose of R.C. 2317.02(B). The privilege was not designed to operate in this manner, nor will

we sanction such use. See *State* v. *District Court of Iowa, supra,* at 644.

In *State* v. *Betts, supra,* the Oregon Supreme Court found that state's physician-patient privilege to be applicable only in civil proceedings. The court balanced the interests of both public and patient, and concluded as follows:

"* * * Assuming [that] * * * the privilege is responsible in some instances for a physician being better able to perform his mission, it is still necessary to examine the other side of the proposition. How is the public welfare, that part that is dependent upon the efficient administration of criminal justice, served by the privilege? Unquestionably, the administration of criminal justice is impeded by the privilege. A physician attending a defendant is frequently the sole or most competent source of very relevant evidence. In the present case the physician was the person best qualified to testify to a relevant fact, — was the defendant intoxicated? In other cases the question could be, — was the defendant under the influence of narcotics or how recently did the defendant's wound appear to have been inflicted? It seems obvious that the testimony of the treating physician is highly important in many criminal cases.

"We conclude that the dubious benefit provided by throwing the veil of privilege over the patient-physician relationship is outweighed in criminal proceedings by the advantage to the public secured by the efficient administration of criminal justice which is obtained by permitting the introduction of competent and relevant evidence which the physician can give about his patient. * * *" *State* v. *Betts, supra,* at 140-141. See, also, *State* v. *Bedel, supra,* at 124.

We find the foregoing reasoning to be persuasive. Driving while intoxicated, with its great potential for serious injury or death, undeniably represents a reckless and inexcusable disregard for the rights of other members of the travelling public.[1] Cf. *Focht* v. *Rabada* (1970), 217 Pa. Super. 35, 41, 268 A. 2d 157; *Holmes* v. *Hollingsworth* (1961), 234 Ark. 347, 350-351, 352 S.W. 2d 96. The public interest in enforcing R.C. 4511.19, by prosecuting persons charged with having violated it, is indeed compelling. "* * * [T]he patient-physician privilege must give way where it conflicts with the sensible administration of the law and policy relating to drunken driving * * *." *State, In the Interest of M.P.C., supra,* at 136.

As we noted above, R.C. 2317.02(B), being in derogation of the common law, is to be given a strict construction. *Weis* v. *Weis, supra.* In balancing the public interest in prosecuting those charged with driving while intoxicated against the patient's interest in having his confidential communication protected from disclosure and use in a court of law, we conclude that the public interest is acute and the patient's interest, under the facts of this case, is marginal at best. Consequently, policy considerations militate in favor of the sensible and efficient administration of criminal justice. The incidental burdens imposed on the physician-patient relationship in this case are far outweighed by the substantial benefits to the public in effectively enforcing R.C. 4511.19. Accord *State* v. *Antill, supra,* at 64-65. Therefore, the trial court did not err in admitting the results of the blood-alcohol test. Appellant's first assignment of error is not well-taken.

Appellant's second assignment of error is as follows:

---

[1] Statistics compiled by the Ohio Department of Highway Safety for the first nine months of 1982 indicate that out of a total one thousand eighty-one traffic fatalities, four hundred fifty-nine were alcohol related. These statistics are currently available as part of a data compilation entitled: "Ohio Department of Highway Safety — Integrated Traffic System, November 1, 1982."

"For the results of a blood-alcohol test to be admissible at trial, the test must have been conducted by a person possessing a valid permit from the department of health, pursuant to section 3701.143 Ohio Revised Code. Since the test in this case was not taken in that manner, the trial judge erred when he denied the defendant's motion to suppress the results."

In support of his second assignment of error, appellant argues that the blood-alcohol test result revealing a blood-alcohol concentration level of 0.25 percent was rendered inadmissible in evidence because the hospital lab technician who analyzed the sample did not possess a valid testing permit as mandated by R.C. 3701.143. Appellant maintains that the lack of proper certification alone precluded the admission of the blood-alcohol test at trial. Since appellant's argument goes to admissibility, we look to the provisions of R.C. 4511.19, which provide, in part, as follows:

"In any criminal prosecution for a violation of this section, or ordinance of any municipality relating to driving a vehicle while under the influence of alcohol, *the court may admit evidence* on the concentration of alcohol in the defendant's blood at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of such alleged violation. *When a person submits to a blood test at the request of a police officer* under section 4511.191 of the Revised Code, only a physician or a registered nurse shall withdraw blood for the purpose of determining the alcoholic content therein. This limitation does not apply to the taking of breath or urine specimens. Such bodily substance shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health pursuant to section

3701.143 of the Revised Code. * * *" (Emphasis added.)

R.C. 4511.19 specifically provides that where an individual submits to a blood-alcohol test (as distinguished from a urine or breath test), at the request of a police officer, "* * * only a physician or a registered nurse shall withdraw blood for the purpose of determining the alcoholic content therein. * * *" As the facts clearly indicate, Trooper Walker never requested that appellant take a blood-alcohol test. Consequently, the statutory requirements are simply inapplicable to the blood-alcohol test in this case. Also, the fact that the hospital lab technician, though otherwise qualified, did not possess a testing permit issued by the director of health, goes only to the weight of the test result, not to its admissibility. Cf. *Barber* v. *Curry* (1974), 40 Ohio App. 2d 346, 351 [69 O.O.2d 312]. In the *Curry* case, the Court of Appeals for Franklin County stated as follows:

"Accordingly, the two-hour time limitation set forth in R.C. 4511.19 relates not to the admissibility of chemical tests, when properly qualified, but, rather, as to when evidence of such test will give rise to the presumptions set forth in R.C. 4511.19. Accordingly, R.C. 4511.19 does not preclude the admissibility of evidence, otherwise properly qualified, of chemical tests administered subsequent to the two-hour time period set forth therein, but merely precludes evidence of a test not given within such time period from giving rise to the presumptions set forth in R.C. 4511.19." *Barber* v. *Curry, supra*, at 351.

Prior to the trial herein, appellant submitted a motion for reconsideration in which he relied on the case of *Oregon* v. *Hilton* (1980), 49 Ore. App. 927, 620 P. 2d 970, to argue that the result of his blood-alcohol test was inadmissible at trial. In disposing of this motion, Judge Allen found the *Hilton* case distinguishable, but ruled, in part, as follows:

"* * *[T]he State of Ohio in this case

should be * * * denied the advantages of the presumptions provided for in section 4511.19 * * *, as a result of the blood-alcohol test in this case not having been done in accordance with the provisions of the Ohio Revised Code."

We concur. Appellant maintains that *Cincinnati* v. *Sand* (1975), 43 Ohio St. 2d 79 [72 O.O.2d 44], precludes the admission of test results where the person conducting the test is not a qualified individual possessing a proper permit issued by the director of health. Yet, the *Sand* holding proscribed only the admission of breathalyzer test results which failed to conform to the three conditions set forth in the second paragraph of the syllabus therein. Furthermore, the *Sand* court did not address the issue of whether the presumption in R.C. 4511.19(B) arises in the absence of strict conformity with the statutory requirements for administering a blood-alcohol test. Accordingly, the *Sand* holding is inapplicable. In this case, the result of appellant's blood-alcohol test was not introduced for the purpose of establishing the presumption set forth in R.C. 4511.19(B).

In *State* v. *Hernandez* (1978), 62 Ohio App. 2d 63 [16 O.O.3d 114], this court held that the two-hour requirement for collecting blood and urine samples did not affect the *admissibility* of test results procured from such samples in a prosecution for aggravated vehicular homicide. We stated, in part, as follows:

"We * * * find that the test, as conducted, can be qualified under generally accepted rules of evidence as having a scientific basis in fact and generally recognized by courts of law; therefore, it was admissible in evidence, *independent of health department regulations* specifically dealing with driving while under the influence cases." (Emphasis added.) *Id.* at 68.

The test result herein was admissible if the prosecution could first establish by expert testimony (and other foundational proof) that the testing procedures used were reliable and that the person doing the testing had sufficient training and skill to qualify him in that regard.[2] However, as the trial court correctly ruled, the prosecution was *not* entitled to the statutory presumption that would otherwise arise in a case where the test result was procured in conformity with R.C. 4511.19 and 3701.143.[3] Consequently, appellant's second assignment of error is not well-taken.

On consideration whereof, this court finds that defendant-appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Maumee Municipal Court is hereby af-

---

[2] See fn. 3, *infra*.

[3] We observe that no *trial* transcript was included in the record of this appeal. We presume that the trial court adhered to its prior decision of June 29, 1982, and did not instruct the jury on the presumption contained in R.C. 4511.19(B). We further note that in *State* v. *Hernandez, supra,* the prosecution and defense entered into certain stipulations, the most pertinent of which are as follows:

"* * * It was * * * agreed that the prosecuting attorney would introduce an expert to testify as to the scientific correlation between the test results and the state of intoxication of the defendant at the time of the accident. It was further stipulated that the prosecution would not base its case upon any presumption set forth in R.C. 4511.19 (of being under the influence of alcohol), nor would the state request an instruction of law on any presumption." *State* v. *Hernandez, supra,* at 64.

The record in this case is silent as to the precise manner in which evidence of appellant's blood-alcohol test was introduced at trial. Therefore, the presumption arises that such evidence was properly admitted. See *Knapp* v. *Edwards Laboratories* (1980), 61 Ohio St. 2d 197, 199 [15 O.O.3d 218]. See, also, 5 Ohio Jurisprudence 3d 109, Appellate Review, Section 553; 4 Ohio Jurisprudence 3d 518, Appellate Review, Section 248.

firmed. This case is remanded to said court for execution of sentence and assessment of costs. Costs assessed against appellant.

*Judgment affirmed.*

CONNORS, P.J., and BARBER, J., concur.

WILEY, J., retired, of the Sixth Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.