**STATE of Iowa, Plaintiff-Appellee,**

v.

**Glendale MORE, Jr., Defendant-Appellant.**

**No. 84–605.**

Court of Appeals of Iowa.

Dec. 18, 1985.

Charles Harrington, Chief Appellate Defender, and Deborah A. Goins, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen. and Rebecca L. Claypool, Asst. Atty. Gen., for plaintiff-appellee.

Considered by DONIELSON, P.J., and SCHLEGEL, and HAYDEN, JJ.

SCHLEGEL, Judge.

Defendant appeals his conviction of first-degree murder. He raises three issues: (1) the trial court erred in admitting testimony of physicians and a nurse; (2) the trial court abused its discretion in denying his motion for a new trial based upon newly discovered evidence; and (3) ineffective assistance of counsel. We affirm the conviction.

Defendant More was convicted of murdering his girlfriend, Waunita Townsend late in the afternoon, August 28, 1983, near a Davenport car dealership. Defendant denied the charge and raised the defense of alibi.

The facts, as far as they are relevant, are as follows. The victim's body was found in her burned automobile at 5:35 p.m. on the 28th of August. That night defendant was questioned by Davenport police about the murder, but defendant told the police he had gone to Peoria, Illinois, that afternoon to get a phone number from a sign which advertised land for sale. During the questioning defendant told police that he was suffering chest pains and was rushed to Mercy Hospital in Davenport.

Once defendant arrived in the emergency room he did not speak to anyone, including Dr. Hahn, the emergency physician, or Sarah Saunders, the nurse on duty that night. All through Dr. Hahn's examination defendant simply laid on the bed with his eyes closed and said nothing. Unable to find anything physically wrong and unsuccessful in getting the defendant to respond verbally, Dr. Hahn decided to commit defendant to the psychiatric ward on a 48-hour emergency order pursuant to Iowa Code section 229.22 (1983).

While in the psychiatric ward, defendant was examined by Dr. Campbell who was also unable to extract from defendant any specific information as to physical or mental maladies possibly affecting him at that time.

Defendant was discharged on August 30, 1983, and was met at the hospital by two Davenport detectives who asked the defendant to finish his initial interview at the police station. Defendant followed the police to the station but after a short time left the station on his own accord. At no time, during his stay at the hospital or his visits to the police station, was defendant placed under arrest.

**I. *Admissibility of Physician's Testimony.*** No testimonial privilege exists at common law concerning information obtained from a patient by his physician. The privilege, insofar as it exists, arises solely by virtue of Iowa Code section 622.10.

Iowa Code section 622.10 (1983) states, in relevant part:

A practicing ... physician, ... physicians assistant, (or) mental health professional, ..., who obtains information by reason of the person's employment ... shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.

The essential elements of communication privileged under the doctor-patient relationship are: (1) the relation of doctor-patient; (2) information acquired during this relation; and (3) the necessity and propriety of the information to enable the doctor to treat the patient skillfully in his professional capacity. *State v. District*

*Court of Linn County*, 218 N.W.2d 641, 643 (Iowa 1974); *State v. Bedel*, 193 N.W.2d 121, 124 (Iowa 1971); *State v. Tornquist*, 254 Iowa 1135, 1154, 120 N.W.2d 483, 494 (1963).

These elements must exist for the privilege to apply whether the physician is a state employee or privately employed and whether the examination is by court order or arranged by the defendant privately. *State v. Nowlin*, 244 N.W.2d 596, 602 (Iowa 1976); *see also* McCormick on Evidence, § 99 at 213–214 (Second Ed.1972).

The State has assumed that the first two elements exist in the case at bar. The question therefore becomes whether, despite a complete lack of verbal communication between the defendant and the doctors, there is still "information" obtained by the physician that can be protected by the doctor-patient privilege. In *State v. District Court of Linn County*, 218 N.W.2d at 643, the Iowa Supreme Court said, "the word 'communication' as it appears in § 622.10 has been interpreted to mean *all knowledge and information gained by the physician in the observation and personal examination* of the patient in the discharge of his duties." (Emphasis added.)

The State's purpose in using this testimony was to demonstrate defendant's malingering and intentional delay tactics to avoid further interrogation at the police station. This evidence would certainly help damage defendant's credibility, especially since his defense was alibi.

It is very important to remain cognizant of when the State realized that the testimony of the physicians could be used against the defendant. It was not until after the physician in the emergency ward had finished his examination that the State felt it had evidence that there might not be anything wrong with defendant. Therefore, it was only through the physician's "knowledge and information gained ... in the observation and personal examination ...," that the State felt confident that the defendant might not really be suf-

fering from chest pains. But, if defendant had told the doctors of a specific pain and yet the examination revealed nothing, the State could not use this communication as evidence. We see no need for the defendant to say something for the attending physician to gain "knowledge and information" so as to discharge his duties. The information received by the doctor through his examination is still information necessary and proper to treat the defendant despite the fact that it turned up no illness or medical emergency.

The State asserts that the communication and information obtained by Dr. Campbell, the psychiatrist, is not privileged because the purpose of defendant's admission was not for treatment. It cites *State v. Cole*, 295 N.W.2d 29, 32 (Iowa 1980), as its authority.

First, we feel that *State v. Cole* is factually distinguishable from the case at bar. In *Cole*, the defendant had already been charged with murder and had raised the defense of diminished capacity. Consequently, the court ordered the defendant to be admitted for the purpose of determining her mental condition. The information received by the doctors pursuant to this examination related directly to the crux of the issue in the case. It was even determined that the patient-defendant had waived the privilege by virtue of the theory of her defense. In the case at bar, on the other hand, the defendant had not been arrested or charged, nor did he assert any medically related defense. In *Cole*, the State needed the testimony to rebut the defense asserted by the accused. Here, the State wishes to use this testimony to raise the inference that the defendant is not credible.

The supreme court, in *Cole*, relied on its earlier decision in *State v. Mayhew*, 170 N.W.2d 608, 615 (Iowa 1969), when it said, "the physician-patient privilege does not arise where on order of the court a defendant is examined to determine his mental or physical condition." *Cole*, at 33. The State here asserts that the order admitting defendant More to the psychiatric ward

should be similarly construed in that it did not specifically provide for treatment.

Defendant More was admitted to the hospital psychiatric ward on court order pursuant to Iowa Code sections 229.22(3) and 229.22(4) (1983). Sections 229.22(3) and 229.22(4) provide that the court may order the custody of an individual when there is "probable cause to believe that the person is likely to physically harm himself or others." Under these sections, the hospital may provide treatment which is necessary to preserve life or control behavior, but otherwise may not treat the individual. Indeed, the court noted in its order that the purpose for admitting More to the hospital was because "the hospital staff believed the patient posed a danger to himself."

We do not believe the court order admitting the defendant, or the privilege should be as narrowly construed as the State asserts. In *Mayhew* at 615, the supreme court also states:

> The cited cases distinguish between an examination of a defendant solely to ascertain his mental and physical condition as opposed to diagnosis and treatment. Only in the former situation is the privilege unavailable, in the latter situation the defendant still can invoke the privilege. "This significant distinction is noted in the general rule as stated in Wharton's Criminal Evidence, Twelfth Ed., vol. 3, section 818, page 171, as follows: 'The privilege does not arise where an examination of a person is made to determine the existence of a fact or condition, as distinguished from giving him medical treatment. Thus, the privilege does not arise, and a physician may testify as to the result of an examination made for the sole purpose of seeing whether the condition of the patient indicated the commission of the crime, or whether the defendant was sane....'" *Koonce v. State, supra,* 456 P.2d [549] at 562.

Justice Harris, writing for a three-member dissent in *Cole*, reemphasized the distinction noted above.[1] He pointed out that in *Mayhew* and in *State v. Nowlin*, 244 N.W.2d at 602, the supreme court subscribed to the "sole purpose" rule in construing a court-ordered examination when applying the doctor-patient privilege. He stated that the "sole purpose" rule simply means that even though a court order committing a defendant to a hospital is apparently absolute and clear on its face, the clear record made on the court's purpose should not be ignored. The supreme court cases heretofore have not indicated that a court order or decree should give rise to an unintended result by inadvertent language. *Dairyland, Inc. v. Jenison,* 207 N.W.2d 753, 754–55 (Iowa 1973). The circumstances surrounding its entry are relevant to show its meaning. *Id.* at 755.

The circumstances surrounding the order committing defendant More to the psychiatric ward were that Dr. Hahn felt that the defendant posed a danger to himself. For that reason, he requested the court to order defendant admitted to the hospital. The court did so pursuant to Iowa Code sections 229.22(3) and (4) (1983). Despite the language of the code sections, the *purpose* of admitting the defendant to the psychiatric ward was to diagnose and if necessary treat the defendant. The information obtained by Dr. Campbell, in his examination of defendant, would determine whether or not treatment would be necessary. We are convinced that the "sole purpose" of the order admitting defendant was for diagnosis and treatment rather than to ascertain his mental and physical conditions for purposes of defense. Indeed, it is noteworthy that when called at trial to testify, Dr. Campbell himself believed that a doctor-patient privilege existed as to defendant's medical condition.

The testimony by the doctors and nurse Saunders was privileged and should not have been admitted. It was prejudicial

---

1. *State v. Cole,* 295 N.W.2d 29 (Iowa 1980), was a 4–3 decision. Reynoldson, C.J., and McCor-mick, J., took no part.

in that it very likely hurt defendant's credibility in the eyes of the jury. It was not, however, so prejudicial as to amount to reversible error.

The State produced evidence of defendant's fingerprints on the outside of the car in which the victim was found. A bullet found on defendant matched the bullet used to kill the victim. An eyewitness testified that he heard "two booms" and, shortly thereafter, saw a man use a white container to spread something around the car and light it on fire. The witness testified that the man had a noticeable limp and identified him as the defendant.

Defendant relied on an alibi defense and yet could not overcome circumstantial evidence to the contrary. Also, evidence of defendant's actions after the time of the victim's death, his strange interaction with the victim's children, and the suspicious circumstances surrounding his cross-country travels and eventual arrest in Red Lodge, Montana, adds to the conclusion that defendant did in fact commit the murder. Therefore, in light of the overwhelming evidence of defendant's guilt, the admission of privileged medical testimony is harmless error.

**II.** *Motion for a New Trial.* Defendant testified that after seeing the victim on the afternoon of August 28, 1984, he drove to Peoria, Illinois, to get a phone number from a sign advertising real estate for sale. The State, however, produced the testimony of two police officers who had gone to the area described by defendant and did not see the sign. After the trial, defense counsel received information that the sign did exist. The defendant moved for a new trial based on newly-discovered evidence but the motion was denied. We agree with the trial court.

To prevail on a motion for a new trial based on newly-discovered evidence a defendant must show: (1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material and not merely cumulative or impeaching; and (4) that the evidence probably would have changed the result of the trial. *State v. Allen,* 348 N.W.2d 243, 246 (Iowa 1984); *State v. Gilroy,* 313 N.W.2d 513, 521–22 (Iowa 1981). *See also* Iowa R.Crim.P. 23(2)(b)(8).

In passing on motions for a new trial based upon evidence newly discovered, the trial court is vested with wide discretion. *State v. Compiano,* 261 Iowa 509, 515, 154 N.W.2d 845, 848 (1967). Motions for new trials based upon newly-discovered evidence are not favored and should be closely scrutinized and granted sparingly. *State v. Farley,* 226 N.W.2d 1, 3 (Iowa 1975). The rule is firmly established that to be entitled to a new trial as a matter of law, the rulings of the trial court must appear to have been so prejudicial as to deprive defendant of a fair trial. However, a fair trial does not necessarily mean a perfect trial. *State v. Compiano,* 261 Iowa at 521, 154 N.W.2d at 851; *State v. Haffa,* 246 Iowa 1275, 1286, 71 N.W.2d 35, *cert. denied* 350 U.S. 914, 76 S.Ct. 198, 100 L.Ed. 801; *State v. Mercer,* 261 Iowa 371, 154 N.W.2d 140 (1967) and citations. We may disagree with the trial court on close questions of this nature, but must uphold its ruling if not clearly erroneous. *State v. Compiano,* 261 Iowa at 521, 154 N.W.2d at 851.

Whether the sign existed or not makes little difference to defendant's alibi. Evidence was submitted by the State that an Illinois State Trooper stopped the defendant approximately thirty miles from the Quad Cities at 5:45 p.m. on August 28, 1983, while traveling at 73 m.p.h. in a direction away from the scene of the murder. Other evidence showed that defendant had seen the victim as late as 4:37 p.m. that afternoon in Bettendorf, that defendant had a motive to commit the murder, and that he had purchased a one-year term life insurance policy on the victim in which he was a beneficiary.

We cannot say that the trial court's refusal to grant a new trial when even the newly-discovered evidence does not closely coincide with the defendant's prior testimo-

ny, is an abuse of its discretion. Therefore, we affirm the trial court's denial of defendant's motion for a new trial.

### III. *Ineffective Assistance of Counsel.*
Defendant has also raised the issue that his trial counsel was ineffective. He points out specific testimony by several State's witnesses that were hearsay and damaging, yet unchallenged or objected to by trial counsel. However, due to the inadequacy of the record as to certain aspects of the trial attorney's reasoning, he asks that this issue be preserved for postconviction proceedings. *See State v. Whitsel,* 339 N.W.2d 149, 157 (Iowa 1983). The State asserts, on the other hand, that the issue of ineffective assistance of counsel should be decided on this appeal against defendant. It claims that the minimal allegations of ineffective assistance of counsel and lack of factual showing made here by defendant are inadequate to support a holding that the issue of ineffective assistance of counsel should be preserved. It cites *State v. White,* 337 N.W.2d 517, 520 (Iowa 1983).

■ In *State v. White,* the defendant made certain specific allegations of ineffective assistance of counsel, and then made a general all encompassing additional ineffective assistance allegation without *any* factual support. The Iowa Supreme Court stated that this assertion, without more will not preserve the issue. *See State v. White,* at 519, 520. Here, rather than mere bald assertions, there are specific statements and testimony cited by defendant that we are able to look to and see if the record is adequate to address this issue. We reserve for postconviction relief application, or appropriate hearing, this attack on trial counsel's competence; for even a lawyer is entitled to his or her day in court, especially when his or her professional reputation is at issue. *See State v. Whitsel,* at 157.

Although we hold that the court erred in admitting the testimony of the doctors, it was not so prejudicial as to amount to reversible error. We therefore affirm the trial court.

AFFIRMED.

DONIELSON, P.J., specially concurs.

DONIELSON, Presiding Judge (specially concurring).

I agree with the result the majority reaches, but not its reasoning.

I believe the majority misapplies the third prong of the doctor-patient privilege. Absent the finding of insufficient prejudice to constitute reversible error, the proposition this case stands for, in effect, is that a person being questioned by the police can falsely claim illness so as to "buy time" to fabricate an alibi and receive the full protection afforded by the doctor-patient privilege. The reasoning of the majority as to why the doctor-patient privilege should apply is contrary to what the legislature intended when section 622.10 was enacted.

The reason I believe the doctor-patient privilege does not apply to the unique circumstances of this case is because the record abundantly demonstrates the defendant did *not* have treatment or diagnosis as his purpose when he went to the hospital; instead, his purpose was to avoid the police long enough to concoct an alibi. By saying he was experiencing chest pains, defendant provided himself an opportunity to delay further questioning.

I agree with the trial court's ruling not to apply the privilege because there *is not even a scintilla of evidence in the record to support defendant's bald, self-serving assertion that he was experiencing chest pains.* I think it is peculiar that defendant told the police he was having chest pains and that an ambulance should be summoned, but then, for an unexplained reason, suddenly did not speak to the ambulance crew, attending nurses, or any doctor about his ailments. Once hospitalized, defendant was fully cognizant and displayed no symptoms whatsoever of the ailment he complained of at the police station. He remained mute and uncooperative throughout his hospitalization. The defendant put

on no evidence that he suffered from a debilitating psychiatric affliction which would cause him to be silent, yet fully cognizant. I find it difficult to imagine that someone who truly experienced chest pains would behave in a manner consistent with the behavior displayed by the defendant. The only reasonable interpretation of these events is that defendant lied about his chest pains. In view of this evidence, the trial court apparently determined the defendant feigned his illness and properly allowed admission of the testimony.

The policy behind the doctor-patient privilege would be left intact by admitting this testimony because defendants who legitimately seek medical treatment would be allowed to use the privilege. I think that even those persons who believe they are ill, but are not diagnosed as being ill, can still use the privilege so long as their purpose was to legitimately seek treatment. While I am not in complete disagreement with the majority's analysis of the events which transpired *inside* the hospital, the predicate that the defendant goes to a medical facility for the *purpose of treatment* is missing.

I, nonetheless, concur with the majority's decision that admission of this evidence constituted harmless error.