IN RE GRAND JURY INVESTIGATION OF BRINK.■

(No. CR-222458—Decided April 14, 1988.)

Court of Common Pleas of Cuyahoga County.

*John T. Corrigan,* prosecuting attorney, and *George J. Sadd,* for the state.

*Hahn, Loeser & Parks, Gregory J. Callaghan, R. Steven DeGeorge* and *Pat E. Morgenstern-Clarren,* for St. John Hospital.

MICHAEL J. CORRIGAN, J. This cause comes before the court upon the motion of St. John Hospital to quash a Cuyahoga County Grand Jury subpoena *duces tecum* which sought medical records pertaining to blood tests administered to Richard Brink. The grand jury subpoena was issued in conjunction with a pending grand jury investigation of Brink.

The issue to be decided in this case is whether the physician-patient privilege expressed in R.C. 2317.02(B) extends to medical records subpoenaed by a grand jury pursuant to its investigation of a criminal matter. Upon consideration, this court finds that the public interest in fair and effective law enforcement precludes application of the physician-patient privilege to such records.

The American grand jury is a direct descendant of an English institution whose history can be traced for more than nine hundred years. The English brought the grand jury to the American colonies, where it became the chief method of instituting prosecutions for serious crimes. In this country, our Founders believed that the grand jury was so essential to basic liberties that they provided in the Fifth Amendment to the United States Constitution (which is reflected in similar provisions in many state constitutions) a guarantee that no person could be compelled to stand trial on serious criminal charges unless there had been a grand jury indictment. See Section 10, Article I, Ohio Constitution. Thus, the grand jury's historic functions survive to this very day. See *Costello* v. *United States* (1956), 350 U.S. 359.

The grand jury's responsibilities include "* * * both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions." *United States* v. *Calandra* (1974), 414 U.S. 338, 343, citing *Branzburg* v. *Hayes* (1972), 408 U.S. 665, 686-687. The grand jury is accordingly required to investigate all matters which come within its knowledge. R.C. 2939.06 and 2939.08.

In *United States* v. *Calandra, supra,* the United States Supreme Court delineated the scope of the grand jury's power to carry out its public trust:

"Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may

determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. * * *" *Id.* at 343.

Thus the grand jury is empowered to compel the production of documents. *In re Klausmeyer* (1970), 24 Ohio St. 2d 143, 53 O.O. 2d 346, 265 N.E. 2d 275, paragraph three of the syllabus. Privileged material, however, is exempted from disclosure. Evid. R. 101(B).

The hospital claims that Brink's medical records contain privileged material that may not be disclosed to the grand jury. This claim is based on the assumption that the medical records fall within the physician-patient privilege found in R.C. 2317.02(B). In view of the existing law, this argument is without merit.

Generally, Ohio evidentiary law favors the competency of witnesses. As a result, a witness may not claim a privilege to obstruct the receipt of relevant evidence unless a statute or case law provides such a privilege. *In re Frye* (1951), 155 Ohio St. 345, 44 O.O. 320, 98 N.E. 2d 798, paragraph one of the syllabus. R.C. 2317.02(B) confers a privilege on testimony by a physician of any "* * * communication made to him by his patient in that relation or his advice to that patient" unless the privilege is waived. The physician-patient privilege embodied in R.C. 2317.02(B) did not exist at common law. *In re Loewenthal* (1956), 101 Ohio App. 355, 357, 1 O.O. 2d 302, 303, 134 N.E. 2d 158, 160. Because the statute is in derogation of the common law, it must be strictly construed against the asserting party. *Weis* v. *Weis* (1947), 147 Ohio St. 416, 34 O.O. 350, 72 N.E. 2d 245; *In re Roberto* (1958), 106 Ohio App. 303, 307, 7 O.O. 2d 63, 66, 151 N.E. 2d 37, 39.

A thorough review of the case law defining the scope of R.C. 2317.02(B) reveals that the physician-patient privilege is not absolute. The privilege does not apply when the public interest supporting disclosure in a criminal case outweighs the interest in enforcing the privilege.

The Ohio Supreme Court, in *State* v. *Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548, found that testimony by a physician as to the condition of the victim who had been shot and the nature of the wound resulting from that shooting was admissible in a criminal trial. While the *Antill* court noted that the purpose of R.C. 2317.02(B) "is to encourage patients to make a full disclosure of their symptoms and condition to their physicians without fear that such matters will later become public," the court held that "[a]gainst the interest of the patient in having his condition remain confidential, must be balanced the interest of the public in detecting crimes in order to protect society." *Id.* at 64-65, 26 O.O. 2d at 368, 197 N.E. 2d at 551.

Employing the balancing test set forth in *Antill,* Ohio courts consistently find that public policy considerations defeat the physician-patient privilege in a criminal case.

In *State* v. *Dress* (1982), 10 Ohio App. 3d 258, 10 OBR 372, 461 N.E. 2d 1312, the defendant had been convicted of driving while under the influence of alcohol. Because "the public interest in the sensible and efficient administration of criminal justice outweighs the policy considerations which support the physician-patient privilege * * *," the *Dress* court upheld the admission into evidence of the defendant's blood-alcohol test. *Id.* at 261, 10 OBR at 375, 461 N.E. 2d at 1317.

The court in *Dress* stated:

"The *Antill* opinion implicitly recognized that the [physician-patient] privilege is premised on an underlying calculation that the benefits to the relationship ostensibly gained by excluding the information generated during its existence outweigh the burdens thereby imposed on the truth-seeking process and the administration of justice. Assertion of the privilege serves to remove from the trier of fact otherwise relevant, reliable and competent evidence. Because the privilege operates to the detriment of the truth-seeking process, it has been viewed as a pernicious anomaly in our system of evidence. See 8 Wigmore, Evidence (McNaughton Rev. 1961 Ed.), Sections 2380-2381. * * * [T]he privilege has come to mean little but the suppression of useful truth." *Id.* at 261, 10 OBR at 375, 461 N.E. 2d at 1317.

The *Dress* court also found that "* * * an increasing number of jurisdictions are disallowing application of the physician-patient privilege in the context of criminal prosecutions * * *. See *State, In the Interest of M.P.C.* (1979), 165 N.J. Super. 131, 397 A. 2d 1092; *State* v. *Erickson* (N.D. 1976), 241 N.W. 2d 854; *State* v. *District Court of Iowa* (Iowa 1974), 218 N.W. 2d 641; *State* v. *Bedel* (Iowa 1971), 193 N.W. 2d 121; *State* v. *Betts* (1963), 237 Ore. 127, 384 P. 2d 198; *State* v. *Bounds* (1953), 74 Idaho 136, 258 P. 2d 751. Cf. *State* v. *Kuljis* (1967), 70 Wash. 2d 168, 171-172, 422 P. 2d 480." *Id.* at 261, 10 OBR at 375-376, 461 N.E. 2d at 1317.

The court therefore concluded that while "* * * the law, to a *reasonable* degree, should encourage a frank and uninhibited flow of information between doctor and patient by protecting their private, confidential communications * * *, the privilege is not absolute and must yield when the public interest outweighs the policy considerations supporting the privilege." (Emphasis

*sic.*) *Id.* at 261, 10 OBR at 376, 461 N.E. 2d at 1317.

Determining that medical testimony is often the only or most competent source of medical evidence in many criminal cases, the *Dress* court found that in a case where a defendant is tried for driving while under the influence of alcohol, the physician-patient privilege must give way to the public interest in the sensible and efficient administration of justice.

Two years later, the court in *State* v. *Tu* (1984), 17 Ohio App. 3d 159, 17 OBR 291, 478 N.E. 2d 830, was faced with the same issue presented in *Dress.* It was again held that R.C. 2317.02(B) does not preclude the admission into evidence of hospital records pertaining to a blood-alcohol test in a prosecution for driving while intoxicated. The *Tu* court grounded its holding on the rationale articulated in *State* v. *Dress, supra.* The court also noted that while "to a *reasonable* degree and as a general rule, law and public policy should protect" physician-patient communications, statutory privileges "were simply not designed or intended to shield criminal conduct." (Emphasis *sic.*) *Id.* at 162-163, 17 OBR at 294, 478 N.E. 2d at 833.

In response to the defendant's contention that persons would be deterred from seeking medical help unless the privilege was absolute, the court further stated that there was no evidence that people were deterred from obtaining medical help before statutes creating a physician-patient privilege were enacted. Indeed, the court observed:

"[I]n jurisdictions presently having either *no* physician-patient privilege or an extremely limited one, people are no more 'deterred' from exchanging private, confidential information with their physicians than they are in those jurisdictions having a broadly drawn

statutory privilege. See 8 Wigmore, Evidence (McNaughton Rev. 1961 Ed.), Section 2380a. Thus, the 'deterrence' premise that underlies arguments in favor of the privilege is, at best, a very tenuous assumption. * * *'' (Emphasis *sic.*) *Id.* at 163, 10 OBR at 294, 478 N.E. 2d at 834.

More recently, the Cuyahoga County Court of Appeals held that the physician-patient privilege does not protect blood-alcohol tests from disclosure in a vehicular homicide case. In *State* v. *Kavlich* (1986), 33 Ohio App. 3d 240, 515 N.E. 2d 652, the appellant, citing several civil cases, argued that *Dress* and *Tu* should be ignored. Despite the appellant's assertion, the *Kavlich* court endorsed the reasoning found in *Dress* and *Tu,* determining that the public interest in enforcing the vehicular homicide statute ''* * * outweighs the narrow policy considerations in support of the physician-patient privilege.'' *Id.* at 243, 515 N.E. 2d at 654.

Against this great weight of authority, the hospital nevertheless contends that Brink's hospital records may not be released. As in *Kavlich,* civil cases are once again used to support this argument.

The hospital first cites *State, ex rel. Lambdin,* v. *Brenton* (1970), 21 Ohio St. 2d 21, 50 O.O. 2d 44, 254 N.E. 2d 68, for the proposition that the physician-patient privilege extends to hospital records. The *Lambdin* court found that the trial court erred in finding that filing a personal injury suit constituted a waiver of the physician-patient privilege. In the present case, the issue does not involve a *waiver* of the privilege, but instead concerns the *application* of that privilege. Moreover, policy considerations that prevent application of the privilege in a criminal proceeding are not present in a personal injury case.

The hospital next points to *Pacheco* v. *Ortiz* (1983), 11 Ohio Misc. 2d 1, 11 OBR 43, 463 N.E. 2d 670, a case in which the court considered whether a hospital should be held in contempt for refusing to comply with a subpoena *duces tecum.* The subpoena, issued pursuant to a deposition, requested medical records of a plaintiff in a personal injury action. Finding that the hospital acted properly, the *Pacheco* court held that absent a waiver or a court order granting a motion showing good cause, the hospital records could not be released. Like *Lambdin, Pacheco* did not discuss the scope of the physician-patient privilege. Moreover, the subpoena in *Pacheco* was issued by an attorney and not by the court. Therefore, the hospital's reliance on *Lambdin* and *Pacheco* is misplaced.

The cases controlling the issue before this court deal with the applicability of the physician-patient privilege to evidence in a court proceeding. The policy considerations which allowed disclosure of medical records in these cases assume even greater significance when viewed in the context of a grand jury investigation.

As a grand jury proceeding is an *ex parte* investigation to determine if a crime has been committed and if criminal proceedings should be instituted, its ''investigative power must be broad if its public responsibility is adequately to be discharged.'' *Calandra, supra,* at 344. Indeed, ''* * * society's interest is best served by a thorough and extensive investigation.'' *Wood* v. *Georgia* (1962), 370 U.S. 375, 392. Thus, society's interest in fair and effective law enforcement is best accomplished by allowing the grand jury to have access to medical records when investigating a criminal matter.

The policy considerations which dictate the abrogation of the physician-patient privilege in a trial proceeding certainly mandate disclosure of medical records in a grand jury proceeding. Moreover, a proceeding

before the grand jury is secret in nature. Therefore, a patient's interest in preserving the confidentiality of his medical records is protected.

Accordingly, this court concludes that the physician-patient privilege does not extend to medical records subpoenaed pursuant to a grand jury investigation.

*Motion to quash denied.*