THE STATE OF OHIO, APPELLEE, *v.* HALLECK, APPELLANT.

[Cite as State v. Halleck (1970), 24 Ohio App. 2d 74.]

(No. 274—Decided September 3, 1970.)

*Mr. William D. Kennedy,* for appellee.
*Messrs. Meyers & Meyers,* for appellant.

GRAY, P. J. This cause is in this court on appeal from a judgment of the Court of Common Pleas of Pickaway County on a verdict of a jury finding defendant guilty of first degree murder. Mercy was recommended. The cause was tried in Pickaway County on a motion for change of venue from Lawrence County where the murder is alleged to have taken place. Defendant, feeling aggrieved by this result of his trial, filed his notice of appeal on questions of law and assigns the following errors:

"Assignment of Error I—The court erred in refusing to grant motion of defendant for an amended or supplemental bill of particulars filed April 14, 1967. Same being deprivation of defendant's rights.

"Assignment of Error II—The court erred in refusing to sustain demurrer of defendant to the alleged amended bill of particulars filed April 14, 1967. Same being in deprivation of defendant's rights.

"Assignment of Error III—The court erred in refusing defendant's motion to dismiss made at the conclusion of evidence for the state.

"Assignment of Error IV—The court erred in denying defendant's motion to dismiss made by defendant at the close of all the evidence.

"Assignment of Error V—The court erred in denying defendant's motion for a directed verdict made at the close of all the evidence.

"Assignment of Error VI—Irregularity in the proceedings of the court in that said court:

"(a) Wrongfully admitted evidence over the objections of said defendant.

"(b) Wrongfully excluded evidence presented by the defendant.

"Issue I (Assignment VI)

"Should a parole officer be permitted to testify over objections of the defendant, to statements made by parolee while said parolee was in custody in county jail charged with violation of parole, the trial of said parolee for an act allegedly committed several weeks later?

"Assignment of Error VII—That the verdict is not sustained by sufficient evidence and is contrary to law.

"Assignment of Error VIII—The verdict in this case is against the weight of the evidence.

"Assignment IX—The court erred in including in its charge to the jury a charge with reference to aiding and abetting."

We will now address ourselves to assignments of error numbers 1 and 2. A bill of particulars and an amended bill of particulars were filed. Outside the fact that the amended bill stated that Eugene Markel, Chief of Police of the city of Ironton, was killed by gunfire, the bill gives no more facts than those contained in the indictment.

In the first instance, an application for a bill of particulars is addressed to the sound discretion of the court. *Wong Tai* v. *United States*, 273 U. S. 77. The purpose of a bill of particulars is to inform a defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to prevent surprise, or to plead his acquittal or conviction in bar of another prosecution for the same offense. However, it is not the function

of a bill of particulars to enable a defendant to obtain access to evidentiary matters. *Stumbo* v. *United States,* 90 F. 2d 828, 833, certiorari denied, 302 U. S. 755. Nor will such a bill be ordered where the information sought is within the knowledge of the defendant or is information which he has equal opportunity with the state of Ohio to discover.

The state's case was based upon and built around the plotting of the jail break and the activities of the four prisoners in furtherance thereof in the office of the Sheriff of Lawrence County. Defendant admits he was in the Sheriff's office almost to the moment Chief Markel was killed. It is established in the record by reliable, substantial, and probative evidence that defendant was present in the Sheriff's office when Markel was killed and that defendant fired the shot that killed him. Therefore, we can not conceive of any fact which the state, by way of a bill of particulars or by way of making the allegations of the indictment definite and certain, could have furnished defendant that was not already locked in his own breast. See *State* v. *Anderson,* 10 Wash. 2d 167, 180, 116 P. 2d 346.

Defendant is entitled to a bill of particulars only when the particular facts of the case warrant.

In *Foutty* v. *Maxwell,* 174 Ohio St. 35, 38, the court said:

"The basic purpose of the bill of particulars is not to reveal the state's evidence but simply to state specifically the nature of the offense charged. * * *"

In *State* v. *DeRighter,* 145 Ohio St. 552, in the course of the opinion, at page 556, it is said:

"Hence, it is clear that the purpose of a bill of particulars is not to disclose the state's evidence but simply to state specifically the nature of the offense charged. When this is stated in the indictment the accused is entitled to no bill of particulars * * *."

In *Boynton* v. *Sacks,* 173 Ohio St. 526, 529, the court said:

"The purpose of an indictment is to inform the accused of the nature of the offense with which he is charged. *Holt* v. *State,* 107 Ohio St. 307. If the indictment does this

then the court does not abuse its discretion in failing to order a bill of particulars. With these rules in mind we will now consider the counts in the indictment.

"* * * Clearly, this court informed the petitioner of the specific nature of the offense charged, and failure to furnish him with a bill of particulars would not constitute prejudicial error even on an appeal."

In the light of the above authority we cannot say that it affirmatively appears from the record that the accused was prejudiced by error or prevented from having a fair trial. *State* v. *Petro,* 148 Ohio St. 473.

The court will treat assignments of error Nos. 3, 4, 5, 7 and 8 together. Eugene Markel, Chief of Police of the city of Ironton, was shot and killed in the office of the Sheriff of Lawrence County, Ohio, on December 2, 1966. Defendant was charged with the murder of the police chief under R. C. 2901.04 which states in part as follows:

"No person shall willfully kill a * * * policeman * * * while such * * * policeman * * * is in the discharge of his duties."

Four prisoners in the jail were involved. There were three deputy sheriffs involved. The prisoners were Bailey, Browning, Halleck and Jenkins. The deputies were Chapman, Henry, Mullins. By a ruse Bailey obtained the service revolver of Chapman. Bailey, while holding Chapman's gun, ordered Chapman to open the jail doors. As Chapman opened the door he saw that Halleck, Jenkins and Browning were standing at the jail door waiting to come out. Chapman announced that it was a jail break and they wanted everyone out.

At that time a Coal Grove police officer by the name of Sites came into the Sheriff's office. While Bailey had him covered with his gun, Halleck took a nickel plated revolver from a holster on Sites.

Jenkins picked up a revolver that Mullins had been forced by Bailey to drop to the floor.

Browning had Giles' gun. Bailey had Chapman's gun. Jenkins had Mullins' gun. Defendant had Sites' gun. All the guns were in the hands of the prisoners to aid them in

their common purpose to escape. None of the prisoners tried to thwart each other's activities to escape from the jail. They disarmed the police and sheriff's deputies but did not disarm each other or attempt to aid the peace officers to foil the jail break.

Chief Markel came to the Sheriff's office in response to a telephone call. When the Chief arrived at the Sheriff's office he first encounted Jenkins. Jenkins was shot and slumped to the floor.

Shortly thereafter, Markel was shot and killed. Defendant was charged with that murder. No witness had a full view of the person who did the shooting. Officer Mullins testified that he saw about 6 or 8 inches of an arm and hand extend beyond a doorway. In that hand was a shiny pistol. The person was wearing a white shirt with long sleeves. Mullins had seen defendant remove this gun from the person of Officer Sites shortly before that time. It was established by the evidence that the Sites' gun was fired twice and that that gun was the one that shot the bullet which killed Markel. There was evidence that defendant was dressed at that time in a white shirt with long sleeves. Later, Sites recovered the gun in the room where Halleck was seen shortly before. Sites was the only person present who had a shiny pistol.

Evidence was introduced that Browning, Halleck, Jenkins and Bailey were attempting to enlarge a hole in the jail in an attempt to escape shortly before December 2, 1966. Evidence was also introduced that the four prisoners attempted to recruit another prisoner, Slagle, to join them in their escape attempt, in which Markel was killed. He refused.

There was also evidence to the fact that defendant, Halleck, who had a lengthy previous criminal record, threatened to kill all the police officers in Lawrence County, including his probation officer.

Testimony was introduced that when defendant, while in jail on December 2, 1966, shortly before Chapman released them, heard a commotion in the sheriff's office he said to Browning and Jenkins, "This is it, get ready."

We are of the opinion that the evidence in this case establishes a conspiracy to escape confinement and to do anything to accomplish that end.

The principle of law is well established that when several persons combine to commit an unlawful act, to break jail in this instance, each is criminally responsible for the acts of his associates committed in furtherance of the common design. Chief Markel was killed while the four prisoners put in execution their plot to escape from jail.

It is not for a reviewing court to weigh evidence or to determine the credibility of witnesses; the verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it. We specifically find that there was substantial evidence to support the verdict of the jury.

We come now to consider the issue whether Chief Markel of the Ironton Police Department, not deputized by the Sheriff, was in the discharge of his duties when he was inside the Lawrence County Jail in response to a telephone call that a prisoner had a gun on a deputy sheriff in that jail.

R. C. 737.11 states in part:

"The police force of a municipal corporation shall preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority thereof, and all criminal laws of the state and the United States."

That is broad authority and it is not limited in space or territory. The Legislature did not limit the jurisdiction of police officers. R. C. 2935.03 states in part:

"A sheriff, deputy sheriff * * * or police officer shall arrest and detain a person found violating a law of this state, or an ordinance of a municipal corporation until a warrant can be obtained."

R. C. 2917.12 states in part:

"No person shall aid or assist a person, lawfully confined in a jail or other place of confinement to escape * * * therefrom."

A jail break occurred in the jail located in the city of

Ironton. The police headquarters in Ironton was called and informed thereof. A law was violated by defendant and his three co-conspirators, and Chief Markel of the Ironton Police Department was killed in the performance of his duties as a police officer of the city of Ironton.

Claim is made by defendant that the introduction, over objection of defendant, of the statement made by defendant to his parole officer in the autumn of 1966 was prejudicial error.

The alleged objectionable statement is as follows:

"He told me he intended to escape from the Lawrence County Jail. That he intended to go to the armory in West Virginia where he would obtain a sub-machine gun and starting with me, and I well remember, that starting with me he was going to eliminate all law enforcement officers in Lawrence County."

The basis for the claim is that defendant and his parole officer occupied a confidential relationship. This claim we reject. R. C. 2317.02 states what are privileged communications and acts. The relationship claimed here to be a confidential one is not listed therein.

The fourth paragraph of the syllabus of *Weis* v. *Weis*, 147 Ohio St. 416, states in part as follows:

"Section 11494, General Code [now R. C. 2317.02] making privileged communications between certain persons, being in derogation of the common law, must be strictly construed, and consequently such section affords protection only to those relationships which are specifically named therein. * * *"

On that basis we find such assignment of error without merit.

Claim is next made that the holdings of *Miranda* v. *Arizona*, 384 U. S. 436, have been violated. Many things have been claimed for *Miranda*, but we have not seen any cases nor have any been cited to us to the effect that when one person threatens to kill another who is his parole officer such officer must keep that information confidential and secret.

It is alleged that parole officer Rist gave defendant

in-custody interrogation without giving defendant the *Miranda* warnings.

It is difficult for this court to conceive how Rist could subject defendant to in-custody interrogation concerning a planned escape which might or might not take place in the future. Such plan was hatched in the mind of defendant. Rist could not possibly know anything about it until defendant told him about it, so it is inconceivable that Rist could question him about it. If defendant wants to blurt out something, it is voluntary and does not come within the proscription of *Miranda*.

O'Neill, J., speaking for the court in *State* v. *Perry*, 14 Ohio St. 2d 256, 261, quoted from *Miranda*:

" ' * * * Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence. * * *' "

This assignment of error is without merit.

Defendant next advances the claim that prejudicial error intervened in the trial of this cause in that it was not proved by a sufficient quantum of evidence that defendant knew that Chief Markel was a policeman in the performance of his duties. There was considerable, substantial and probative evidence that defendant knew Markel as a police officer. The jury found such to be the fact, and we are not disposed to disturb that finding.

Finally, claim is made that prejudicial error occurred when the trial court charged on the subject of aiding and abetting. Defendant has not seen fit to cite any authorities for his position. Let it be said that considerable, probative and substantial evidence was introducd into the record that defendants Browning, Bailey and Jenkins on a number of occasions plotted this jail break and in the execution of this plot Markel was killed by defendant.

We find that none of the claimed errors are well taken, and, therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

ABELE and STEPHENSON, JJ., concur.