JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Erwin Bolan ("Bolan"), appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I. {¶ 2} According to the case, Bolan was indicted by a Cuyahoga County grand jury on December 17, 2004, in Case No. CR 460305. Counts one and two charged Bolan with two different forms of felonious assault, in violation of R.C. 2903.11. He was charged in count three with having a weapon while under disability, in violation of R.C. 2923.13. Count four charged Bolan with attempted murder, in violation of R.C. 2923.02 and 2903.02. Counts one, two and four included one- and three-year firearm specifications, pursuant to R.C. 2941.141 and 2941.145, respectively.
 {¶ 3} The bill of particulars filed by the state in connection with the case sub judice indicated that all of the offenses had been committed at 7:00 a.m. on November 10, 2004, at 10813 Tacoma Avenue in Cleveland, Ohio. The case proceeded to jury trial on February 1, 2005. The jury returned a guilty verdict as to all counts on February 4, 2005.
 {¶ 4} Bolan was sentenced on February 9, 2005. The trial court merged the three-year sentences on the firearm specifications, to be served prior to and consecutively to the sentences on the other counts. Bolan received concurrent eight-year sentences on counts one and two. A maximum sentence of five years on count three was handed down, to be served concurrently with all other counts. A ten-year sentence was handed down on count four, to be served consecutively to the sentences on counts one and two.
 {¶ 5} According to the facts, the victim, Lavelle Coleman ("the victim"), was driving around the area of East 111 Street on Cleveland's east side. He stopped at Bolan's grandmother's home to "bag some weed." Later, the victim drove appellant to the home of a friend to look at a television set that he was considering purchasing. The victim also drove to a gas station to get some fuel.
 {¶ 6} Following the trip to the gas station, Bolan told the victim that he was making too many stops. In addition, Bolan requested that the victim return the five dollars he had given to him earlier for gas money. The victim did not want to return the five dollars in gas money to Bolan and instead drove Bolan to a relative's home on Ablewhite, where Bolan wanted to be dropped off.
 {¶ 7} As the victim reached the street of Ablewhite, he slowed down the vehicle, believing that Bolan's relative's home was on the left-hand side of the street. Bolan then told the victim that he did not see anyone at home and to take him to the next street over.
The street that Bolan ultimately directed the victim to was a deadend street. Eventually, the victim parked his vehicle on the right-hand side of the street in front of the last house near the dead end, according to Bolan's instructions.
 {¶ 8} Bolan exited the victim's car, asked the victim to wait for him and proceeded up the driveway toward the backyard of the home. Meanwhile, the victim used his cell phone to call his friend and explain to her that he was on his way to her house. During this time, he observed Bolan walking down the driveway of this home in the direction of his car. Within moments, Bolan returned to the passenger side of the vehicle and asked him who he was talking to, to which the victim responded, "My peoples."
 {¶ 9} Bolan then proceeded to shoot the victim in the face. Bolan continued to click his gun as the victim forced his car into gear to pull away. Another shot was fired and it hit the victim in the head. Ultimately, the victim escaped by placing his vehicle into drive and plowing past the guardrail at the end of the street.
 {¶ 10} Because the victim was both shot and confused, he ultimately decided to drive down Eddy Road toward Huron Hospital to seek medical attention. While en route to the hospital, he sped, drove through traffic lights and swerved through traffic in an effort to alert others to his situation. He eventually saw someone from his neighborhood driving a "distinguished" car and was able to gain their attention to have them drive him the remainder of the way to the hospital.
 {¶ 11} While hospitalized, the victim remained alert. He was able to communicate with law enforcement, specifically telling East Cleveland Police where the crime had occurred and explaining to George Peters, a Cleveland Police Sixth District detective, what had happened to him. The victim was ultimately shown a photo line in which he immediately identified Bolan as the shooter on November 10, 2004. Bolan was eventually sentenced on February 9, 2005. This appeal follows.
 II. {¶ 12} Appellant's first assignment of error states the following: "The defendant was denied federal and state due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when he was convicted on evidence that was insufficient as a matter of law to sustain the convictions for any of the offenses for which he was indicted by the grand jury."
 {¶ 13} Appellant's second assignment of error states the following: "The convictions were against the manifest weight of the evidence." Appellant's third assignment of error states the following: "The appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, of the Ohio Constitution."
 {¶ 14} Appellant's fourth assignment of error states the following: "The trial court erred in imposing a maximum sentence on the attempted murder charge."
 III. {¶ 15} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. With respect to sufficiency of the evidence, sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. State v. Thompkins (1997), 78 Ohio St.3d 380.
 {¶ 16} Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may, nevertheless, conclude that the judgment is against the weight of the evidence. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jurors that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, their verdict shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id.
 {¶ 17} Appellant argues in his first assignment of error that he was denied his due process rights under the United States Constitution and the Ohio Constitution because he was convicted on evidence that was insufficient. We do not find merit in appellant's argument.
 {¶ 18} Appellant argues that the bill of particulars was incorrect.
 {¶ 19} R.C. 2941.07 provides that upon a request for a bill of particulars, "* * * the prosecuting attorney shall furnish a bill of particulars setting up specifically the nature of the offense charged and the conduct of the defendant which is alleged to constitute the offense."
 {¶ 20} A bill of particulars is not designed to provide the accused with specifications of evidence or serve as a substitute for discovery. State v. Sellards (1985), 17 Ohio St.3d 169, Id., citing State v. Halleck (1970), 24 Ohio App.2d 74 andState v. Dinsio (1964), 4 Ohio App.2d 309. The state should amend the bill of particulars, however, where it learns that the bill of particulars contains incorrect information. See State v.Youngs (June 12, 1987), Hancock App. No. 5-86-2. However, we find that in this matter, the defect did not prejudice the defendant's ability to fairly defend himself.
 {¶ 21} Appellant failed to show that he was prejudiced in the defense of his case from any alleged error or that he would have proceeded differently had he had the exact time, date and address of the offense. The bill of particulars in the case at bar provided appellant with adequate notice of the offense charged, as did the several pretrial conferences held with defense counsel.
 {¶ 22} Any defect in the bill of particulars in this case is mere harmless error. The evidence in the record demonstrates that the trial court's actions were proper. Appellant was aware of the charges against him and was not deprived of any due process rights.
Moreover, we find the evidence in the case at bar to be sufficient to support the lower court's conviction.
 {¶ 23} Appellant's first assignment of error is overruled.
 {¶ 24} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. State v. Issa (2001), 93 Ohio St.3d 49; see, also, State v. Thompkins. Id.
 {¶ 25} The proper test to be used when addressing the issue of manifest weight of the evidence is set forth as follows:
Here, the test [for manifest weight] is much broader. Thecourt, reviewing the entire record, weighs the evidence and allreasonable inferences, considers the credibility of the witnessesand determines whether in resolving conflicts in the evidence,the [fact finder] clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered.
 State v. Moore, Cuyahoga App. No. 81876, p. 8, 2003-Ohio-3526, quoting State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Tibbs v. Florida (1982), 457 U.S. 31.
 {¶ 26} The weight of the evidence and credibility of the witnesses are primarily for the trier of fact. Moore at p. 8, citing State v. DeHass (1967), 10 Ohio St.2d 230. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. Moore at p. 8, citing Martin.
 {¶ 27} It is with the above standards in mind that we now address appellant's second assignment of error. In the case at bar, there is nothing in the record to suggest that the trial court clearly lost its way and created such a miscarriage of justice as to require reversal of appellant's conviction.
 {¶ 28} To the contrary, the evidence in the record demonstrates that appellant shot the victim in the neck and head with a gun. There was significant, descriptive, testimonial evidence provided. According to the testimony, Bolan was the passenger of the vehicle driven by the victim; the victim drove Bolan to an address which Bolan identified as the home of a relative; Bolan walked up the driveway of the home where there was no one in sight; Bolan returned to the victim, held a brief conversation with him, and proceeded to shoot the victim in the head and neck.
 {¶ 29} The evidence presented at the trial court, as well as the lower court's complete and accurate review of that evidence, prove appellant's error is without merit. Appellant's convictions are not against the manifest weight of the evidence. Indeed, the manifest weight of the evidence supports appellant's convictions. Appellant's second assignment of error is overruled.
 {¶ 30} Appellant argues in his third assignment of error that he was denied effective assistance of counsel. In order to successfully assert ineffective assistance of counsel under theSixth Amendment, the dual prongs of the test set forth inStrickland v. Washington (1984), 466 U.S. 668, must be satisfied. A defendant must show not only that the attorney made errors so serious that he was not functioning as "counsel" as guaranteed by the Sixth Amendment, but also that the deficient performance was so serious as to deprive him of a fair and reliable trial. Id. at 687.
 {¶ 31} The Ohio Supreme Court set forth a similar two-part test:
First, there must be a determination as to whether there hasbeen a substantial violation of any of defense counsel'sessential duties to his client. Next, and analytically separatefrom the question of whether the defendant's Sixth Amendmentrights were violated, there must be a determination as to whetherthe defense was prejudiced by counsel's ineffectiveness.
 State v. Bradley (1989), 42 Ohio St.3d 136, 141-142.
 {¶ 32} Because there are countless ways to provide effective assistance in any given case, the scrutiny of counsel's performance must be highly deferential, and there will be a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, supra; accord State v. Bradley, supra. In sum, it must be proven that counsel's performance fell below an objective standard of reasonable representation, and that prejudice arose from his performance. Id.
 {¶ 33} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner.State v. Smith (1985), 17 Ohio St.3d 98; Vaughn v. Maxwell
(1965), 2 Ohio St.2d 299. "Judicial scrutiny of counsel's performance must be highly deferential * * *," and "* * * a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Strickland, supra, at 689.
 {¶ 34} The evidence in the record fails to demonstrate ineffective assistance of counsel on the part of appellant's trial counsel. The conduct in this case did not constitute a substantial violation of any of defense counsel's essential duties to the client. Furthermore, we find that the record demonstrates that defendant was not prejudiced by counsel.
 {¶ 35} Appellant's third assignment of error is overruled.
 {¶ 36} Appellant argues in his fourth assignment of error that the trial court erred in imposing a maximum sentence on the attempted murder charge. We do not find merit in appellant's argument.
 {¶ 37} An appellate court may reverse a sentence only if it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. In this case, the maximum prison sentence could be imposed only if appellant was among the offenders who committed the worst forms of the offense, or who posed the greatest likelihood for committing future crimes. R.C. 2929.14(C). When the trial court imposes the maximum prison term, it shall state on the record the reasons for imposing the maximum sentence. R.C. 2929.19(B).
 {¶ 38} To impose the maximum sentence, there must be a finding on the record that the offender committed one of the worst forms of the offense or posed the greatest likelihood of recidivism. See State v. Banks (Nov. 20, 1997), Cuyahoga App. No. 72121; State v. Beasley (June 11, 1998), Cuyahoga App. No. 72853. {¶ 39} While the court need not use the exact language of the statute, it must be clear from the record that the trial court made the required findings. See Id.; State v. Assad (June 11, 1998), Cuyahoga App. No. 72648, 72649; State v. Boss (Sept. 15, 1997), Clermont App. No. CA96-12-107; State v. Fincher (Oct. 14, 1997), Franklin App. No. 97 APA03-352.
 {¶ 40} The trial court stated the following:
So for attempted murder I believe this the worst form of theoffense. The offender also has been convicted in the past ofhaving a firearm, carrying a concealed weapon. He knew it was afelony. He knew he couldn't carry a weapon. And in this case heused it to facilitate the crimes. The court finds that theoffender, based upon the recidivism and seriousness factors,finds that he also poses the greatest likelihood of committingfuture crimes, as his history is significant since he's only 24years of age.
 {¶ 41} In the case at bar, the trial court articulated several factors in which the appellant clearly overcame any presumption in favor of imposing a term of incarceration less than the maximum allowable sentence for the attempted murder charge. Accordingly, we find the evidence in the record demonstrates that the trial court's sentence is proper.
 {¶ 42} Appellant's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., and Karpinski, J., concur.