[Cite as *State v. Julian*, 2011-Ohio-4014.]

.

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## DARKE   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2010-CA-16 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 10-CR-44 |
| v. | : | |
| | : | (Criminal Appeal from |
| GLEN P. JULIAN | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 12th day of August, 2011.

. . . . . . . . .

R. KELLY ORMSBY, III, Atty. Reg. #0020615, and DEBORAH S. QUIGLEY, Atty. Reg. #0055455, Darke County Prosecutor's Office, Darke County Courthouse, Greenville, Ohio 45331
        Attorneys for Plaintiff-Appellee

ANTONY A. ABBOUD, Atty. Reg. #0078151, Gournaris Abboud, Co. LPA, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
        Attorneys for Defendant-Appellant

. . . . . . . . .

HALL, J.

{¶ 1} Appellant, Glen Julian, appeals from his conviction and four-year prison sentence on one count of felonious assault, a second degree felony, in violation of R.C. 2903.11(A)(1).

{¶ 2} Appellant [1] advances three assignments of error on appeal. The first two challenge the legal sufficiency and manifest weight of the evidence to support his conviction. The third asserts the trial court abused its discretion in sentencing him to four years in prison when the appellant's role in the assault was minimal and the other participant in the fray received a lesser sentence.

{¶ 3} The record reflects that a grand jury indicted Appellant on one count of felonious assault in violation of R.C. 2903.11(A)(1) (serious physical harm). The charge stemmed from a fight that took place on the dance floor of Danny's Place, a bar in Greenville, Ohio, on Thanksgiving Eve of 2009. The fight resulted in Joe Bacanegra suffering a dislocated hip, facial injuries, a lacerated lip, ear damage and numerous bruises on his body. (T.p. 290).

{¶ 4} At 7 p.m. the previous day, Joe[2] and his wife, Marissa, invited a group of friends to dinner. The friends were to meet at Joe's house, then all ride to dinner together, with Marissa as the designated driver since the group planned to drink that evening. Each friend drank a beer at Joe's home. Once the group arrived at the restaurant for dinner, most proceeded to have several additional drinks. Following dinner, the group decided to go to Danny's Place. While at Danny's Place, the group continued to drink and all but Marissa became heavily intoxicated. Marissa remained sober. While at Danny's Place, Marissa

---

[1] Appellant, Glen Julian, and his brother, Robert Julian, were both charged as a result of the described assault and their cases were consolidated for trial. Because of their same surname and the multitude of individuals involved, Glen Julian will be referred to as "Appellant" throughout.

[2] For the sake of clarity, the parties involved will be referred to by their first name since most are married and/or related, and therefore, they have the same last name.

noticed Appellant and his friends standing near a railing on the dance floor. Marissa testified that she noticed Appellant because he looked "scary," was intoxicated and not like the other people in the bar. (T.p. 342, 351). Appellant was with Jamie Miller, Robert Julian and Kenny Warner. Joe and his friends knew Kenny Warner, but they did not know Appellant and the other men with him.

{¶ 5} At approximately 2 a.m., Joe and Marissa were on the dance floor when they noticed a brief altercation involving Joe's friend, Aaron, and Appellant's friend, Keel Aukerman. Keel attempted to dance with Aaron's wife, Jenny. Aaron told Keel that he could not dance with Jenny because she was his wife. Keel expressed that he understood and the two men shook hands. Shortly thereafter, a member of Appellant's group proceeded to say something to Aaron. Joe then walked over and told the gentleman, "They shook on it. It's done. They shook on it." (T.p. 347). As Joe was pivoting to turn, Jamie Miller kicked Joe's leg out from under him, causing Joe to fall to the floor whereupon Appellant, Jamie Miller and Robert Julian started to repeatedly hit and kick Joe. (T.p. 347-348). After the men began beating Joe, Marissa feared for Joe's life and knelt down in front of Appellant to shield Joe's head from the blows. (T.p. 348-350). Marissa testified that as she attempted to shield Joe's head, Appellant grabbed her by the hair to pull her away from Joe. (T.p. 349). Marissa's friend, Krista, testified that she saw Marissa attempting to shield Joe's head from the assault. Krista grabbed Appellant's face, shoved him off, and scratched his face with her fingernails. (T.p. 312, 320).

{¶ 6} The attack lasted approximately one minute and ceased when Marissa heard one of the men say the police were on their way. Appellant and his friends then quickly left

Danny's Place. (T.p. 349). Joe was left on the dance floor bleeding profusely. Joe was eventually taken outside where an ambulance arrived to transport him to the hospital. (T.p. 356). Officer Jennifer Freeman of the Greenville Police Department was one of the officers who responded to the scene. While calming the crowd, Officer Freeman received a tip regarding the identification of the suspects in the assault. (T.p. 6-7). This information led Officer Freeman to Robert Julian's residence, where she found Appellant alone in the back yard. Appellant denied being at Danny's Place that evening and also denied being in a fight, although Officer Freeman observed a cut over Appellant's left eye and reported that Appellant appeared agitated and intoxicated. (T.p. 8-9).

{¶ 7} The following day, Marissa and Krista described Appellant's physical attributes, clothing as well as his tattoo of "praying hands" on his neck in their written statements to the police. Additionally, Marissa was shown a photo line-up of possible suspects and immediately identified Appellant as being involved in the assault. (T.p. 359-360). Moreover, Krista, who testified that she knew Appellant prior to the incident, spoke to Officer Freeman and identified Appellant as the person attacking Joe. (T.p. 311-314). Contrarily, Appellant's friends Kenny Warner and Daniel Weaver told Officer Freeman that Appellant was not involved in the attack on Joe.

{¶ 8} At the conclusion of the trial, the jury found Appellant guilty on one count of felonious assault. On August 10, 2010, the trial court sentenced Appellant to four years in prison to run consecutively to a one-year sentence for a burglary conviction from a separate case. (Transcript of Sentencing Hearing p.16). This appeal followed.

{¶ 9} In his first two assignments of error, Appellant challenges the legal sufficiency

and manifest weight of the evidence to support his conviction. When a defendant challenges the sufficiency of the evidence, he is arguing that the state presented inadequate evidence on one or more element of the offense required to sustain the verdict as a matter of law. *State v. Brewer*, Montgomery App. No. 24109, 2011-Ohio-2966, citing *State v. Hawn* (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶ 10} "Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Brewer*, supra, citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. Reversal as against the manifest weight of the evidence should be made "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶ 11} With the foregoing standards in mind, we conclude that Appellant's felonious assault conviction is based on legally sufficient evidence and is not against the manifest

weight of the evidence.

{¶ 12} Appellant was found guilty of violating R.C. 2903.11(A)(1), which provides: "(A) No person shall knowingly cause serious physical harm to another." R.C. 2903.11(A)(1). There was a stipulation that the victim suffered "serious physical harm" (T. p. 163-164, 612) so that element is not in question.

{¶ 13} In his challenge to the legal sufficiency of the State's evidence, Appellant claims that the facts, even when viewed in a light most favorable to the prosecution, are not sufficient to find him guilty of having knowingly caused serious physical harm to Joe. Appellant asserts that Marissa's and Krista's testimonies were contradictory and insufficient for conviction. According to Appellant, during trial, Marissa first testified that Appellant was the "major aggressor," then later testified that "she did not actually see Appellant hit or kick Joe, she just knows that Appellant was behind her after her hair was pulled." Furthermore, Appellant contends Krista's testimony that "she saw Appellant hitting and kicking Joe when she walked up" was insufficient for his conviction for two reasons. First, Krista testified to having approximately ten beers that evening and being intoxicated while observing the altercation. Second, contrary to Krista's testimony, it is logically impossible for Appellant to pull Marissa's hair from behind and attack Joe simultaneously. Appellant argues that his witness, Daniel Weaver, was sober and testified that Appellant was not involved in the fight, but merely trying to stop Jamie Miller from fighting. Moreover, Appellant asserts that during trial, the court stated that it did not view Appellant as an aggressor in this case. After considering these facts, Appellant argues his conviction was not supported by the evidence presented to the jury. We disagree.

{¶ 14} We find that Appellant's conviction was based on legally sufficient evidence. The record reasonably supports a finding, beyond a reasonable doubt, that Appellant knowingly participated with Jamie Miller and Robert Julian in causing serious physical harm to Joe. During trial, Krista testified to the following:

{¶ 15} "* * * A:  He was being punched repeatedly and Marissa had – she was knelt down with her hands over his face to protect it, and I just remember thinking that I have to get them to stop because there was so much blood, and I knew that he couldn't take another blow to the face.

{¶ 16} "Q:  Did you see who was hitting him?

{¶ 17} "A.  Glen.  When I walked up, it was Glen." (T.p. 311).

{¶ 18} Also, during her recollection of the event, Marissa testified:

{¶ 19} "* * * A:  The next thing you know, my husband's – his leg was kicked out from under him. He was actually turned with all of his weight on this left leg ready to pivot and Jamie Miller kicked his leg in from below and they just went to town on him.

{¶ 20} "* * * Q:  When you say 'all of them' who are you referring to?

{¶ 21} "* * * "A:  Glen Julian, Jamie Miller, Robert Julian." (T.p. 347-348).

{¶ 22} "Q:  Okay.  At this point, it's probably very hectic between the lights, the noise, things like that.  Are you able to get a good look at who is actually attacking your husband?

{¶ 23} "A: Yes.

{¶ 24} "Q: Okay.  You seem very certain of that.  Why are you so certain?

{¶ 25} "A:  Because you don't forget something like.  You don't forget when you see

something like that. I don't need a statement.   I don't need a paper to – you don't forget that." (T.p. 350).

{¶ 26} "* * * A:   In my mind, Glen is the major aggressor, yeah." (T.p. 385).

{¶ 27} We find that these testimonies were consistent and sufficient for conviction.   It is not necessary for the State to prove what specific injuries Appellant caused.   The mere fact that Appellant was involved in the attack is sufficient for conviction. We have held "the principle of law is well-established that when several persons combine to commit an unlawful act * * * each is criminally responsible for the acts of his associates committed in furtherance of the common design."  *State v. Halleck* (1970), 24 Ohio App.2d 74, 80.   Accordingly, we find that the evidence presented was sufficient to show Appellant knowingly participated in the attack on Joe, which resulted in serious physical harm.

{¶ 28} The first assignment of error is overruled.

{¶ 29} In his second assignment of error, Appellant asserts his conviction was against the manifest weight of the evidence.   He argues the jury lost its way when it convicted him of felonious assault because his witnesses testified that he was trying to stop Jamie Miller from beating Joe and that he was not involved in the assault.   Although Appellant's witnesses presented testimony which contradicted the State's witnesses' testimony, that discrepancy alone is not sufficient to show the jury lost its way. The jury has the duty of weighing the evidence presented and finding one side's evidence more credible than the other.

{¶ 30} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230. In *State v. Lawson* (August 22, 1997), Montgomery App. No. 16288, we observed:

{¶ 31} "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

{¶ 32} "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97–CA–03." *State v. Ayers*, Montgomery App. No. 24060, 2011-Ohio-3500, at ¶ 22-24. The jury had the opportunity to hear from both the State's witnesses and Appellant's witnesses, as well as Robert Julian's witnesses.

{¶ 33} Although Appellant's witnesses, Daniel Weaver and Kenny Warner, testified Appellant was not involved in the attack, each had different versions of what transpired that evening. Daniel Weaver testified that he and Kenny Warner went to Danny's Place together and that during the fight, Appellant was just pulling Jamie Miller off Joe. (T.p. 488). Weaver further testified that after they were kicked out the bar he, together with Appellant, Jamie Miller and Kenny Warner, went to another bar. Id. However, Kenny Warner testified the he went to Danny's Place alone, although following the assault Weaver told law enforcement that he arrived at Danny's Place with his sister and Keel Aukerman. (T.p. 512-514). Warner further testified that Appellant did nothing during the attack and that Daniel Weaver was not near him and Appellant when the attack occurred. (T.p. 532). The jury

had the opportunity to consider this testimony, as well as observe the demeanor and frankness of the witnesses and assign credibility accordingly.

**{¶ 34}** Upon review, we find Appellant's arguments to be without merit. Witness testimony supports a finding that Appellant was at least a participant in the assault that caused serious injury to Joe. Upon review of the record, we cannot find that the jury lost its way in weighing the credibility of the witnesses. Although Appellant's witnesses, Kenny Warner and Daniel Weaver,   presented conflicting testimony, the jury was free to disbelieve his witnesses and to find Joe, Marissa and Krista's testimonies the most credible.

**{¶ 35}** Accordingly, Appellant's second assignment of error is overruled.

**{¶ 36}** In his third assignment of error, Appellant contends the trial court abused its discretion in sentencing him to four years when his role in the affray was minimal and Jamie Miller was sentenced only to three years. In sentencing him, Appellant argues, the trial court failed to properly consider the statutory principles and purposes of sentencing and the seriousness and recidivism factors. When reviewing felony sentences, an appellate court must first determine whether the sentencing court complied with all applicable rules and statutes in imposing the sentence, including R.C. 2929.11 and 2929.12, in order to determine whether the sentence is contrary to law. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912. If the sentence is not clearly and convincingly contrary to law, the trial court's decision when imposing the term of imprisonment must be reviewed under an abuse of discretion standard. Id.

**{¶ 37}** The phrase "abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable, and as a "view or action that no conscientious

judge could honestly have taken." *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, at ¶23; *Huffman v. Hair Surgeon, Inc*. (1985), 19 Ohio St.3d 83, 87. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Redevelopment* (1990), 50 Ohio St.3d 157, 161.

**{¶ 38}** Here Appellant's conduct reasonably supports imposition of a sentence within the ranges of R.C. 2929.11(A)(1), which authorizes sentences of anywhere from two up to eight eight years in prison for a second-degree felony. We note initially that other than counsel's statement that Jamie Miller received a three year sentence, that sentence, or the manner and reasons for which it may have been imposed, are not in the record before us. Moreover, the trial court stated on the record its reasons for giving Appellant the sentence it did: Appellant's substance abuse history and his three prior felonies. Given Appellant's criminal and substance abuse history, the trial court reasonably determined recidivism is likely. (Transcript of Sentencing Hearing, p. 15). According to the Revised Code, the sentencing court "shall impose the shortest prison term authorized for the offense" unless (1) the offender was previously convicted of a felony offense or (2) the shortest term "will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B). Here, Appellant was

previously convicted of several felonies. Thus, the trial court deemed a prison term of four years for this charge to be reasonable.

**{¶ 39}** We conclude that the trial court did not abuse its discretion in imposing a four-year sentence to be served consecutively with Appellant's one-year sentence for burglary. In the absence of any statute to the contrary, "it is a matter solely within the discretion of the sentencing court as to whether sentences shall run consecutively or concurrently." *State v. Nunez*, Montgomery App. No. 22208, 2008–Ohio–3376, ¶8, quoting *Stewart v. Maxwell* (1963), 174 Ohio St. 180, 181; see, also, *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320.

**{¶ 40}** The third assignment of error is overruled.

**{¶ 41}** The judgment is affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and FAIN, J., concur.


Copies mailed to:

R. Kelly Ormsby, III
Deborah S. Quigley
Antony A. Abboud
Hon. Jonathan P. Hein